Troy **WARREN**, Plaintiff,

v.

**WESTCHESTER COUNTY JAIL, C.O. Angel Casablanca, Corr. Officer Sergeant Orlando, Corr. Officer C.O. Pietrano, Badge 1133, Corr. Officer individually and in their official capacities, Defendants.**

No. 98 Civ. 7215(RWS).

United States District Court, S.D. New York.

July 28, 2000.

Troy Warren, FCI Otisville, Otisville, NY, Plaintiff, pro se.

Alan D. Scheinkman, Westchester County Attorney, White Plains, NY, By: Thomas J. Schrempf, Assistant County Attorney, for Defendants, of counsel.

## OPINION

SWEET, District Judge.

Defendants Westchester County Jail (the "County")[1] and the individual defendants (the "Individual Defendants"), Correctional Officer Angel Casablanca ("Casablanca"), Correctional Officer Sergeant Orlando ("Orlando"), and Correctional Officer Pietranico, Badge 1133 ("Pietranico") (collectively, the "Defendants") move for an order of summary judgment pursuant to Federal Rule of Procedure 56 dismissing the complaint in this action in its entirety. This motion is opposed by plaintiff Troy Warren ("Warren"). Warren moves for an order permitting him to file a third amended complaint and for an order compelling discovery, which motions are opposed by the Defendants, and for an order appointing counsel. For the reasons set forth below, the motion by the Defendants is granted, and the motions by Warren are denied.

### Parties

Casablanca, Orlando, and Pietranico were at all relevant times Correctional Officers employed by the County at the Westchester County Jail.

The County is a municipality within New York State.

Warren was at all relevant times a federal inmate in the custody of the Westchester County Jail.

### Prior Proceedings

Warren brought this action in forma pauperis and pro se under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Specifically, Warren alleges that: (1) the Individual Defendants violated his rights under the Eighth and Fourteenth Amendments of the Constitution by subjecting him to excessive force, (2) this violation of his constitutional rights was the result of a policy or practice of the County, (3) as a result of the Defendants' conduct he suffered both physical and psychological injury, and (4) the Defendants inflicted mental distress on his wife. War-

---

1. The correct governmental defendant is Westchester County. Warren is therefore deemed to have sued the municipality of Westchester County rather than the jail. As explained below, he is also deemed to have sued the county because his claims are brought against the Individual Defendants in their official as well as their individual capacities.

ren seeks compensatory and punitive damages.

Warren filed the first amended complaint in this action on November 8, 1998 and the second amended complaint on September 22, 1999. Discovery was conducted, including production of documents and responses to interrogatories by the Defendants and a deposition of Warren. Discovery closed on March 15, 2000.

The Defendants filed their motion for summary judgment on March 15, 2000 and sent a Notice to Pro se Litigant Opposing Motion for Summary Judgment, pursuant to Local Civil Rule 56.2, to Warren by overnight mail on March 16, 2000.[2] In accordance with Rule 56.2, this notice advised Warren of the procedures for responding to a motion for summary judgment, including the requirement that he submit a response to Defendants Rule 56.1 Statement and counter-evidence such as witness statements and documents. Warren thereafter submitted a timely response to the motion entitled "Affidavit In Opposition To Defendants Motion For Summary Judgment." This document identifies the facts Warren contends are material and undisputed as well as the facts he contends are material and disputed, and includes a memorandum of law as well as numerous exhibits.[3] This matter was deemed fully submitted on April 19, 2000.

By motion dated December 18, 1999 and letter dated February 1, 2000, Warren sought appointment of counsel. These requests were denied with leave to renew. By motion dated February 7, 2000 Warren again seeks an order appointing counsel. This matter was deemed fully submitted on that date.

By motion dated February 14, 2000 Warren seeks an order to compel discovery, which motion he amended by letter dated March 13, 2000. By motion dated March 13, 2000 Warren seeks an order permitting him to file a third amended complaint to add Correctional Officer Joseph Downey ("Downey") as a defendant. These matters were deemed fully submitted on March 31, 2000.

*Facts*

The facts set forth below are drawn from the second amended complaint, the Rule 56.1 statements, exhibits, and other submissions by the parties. What follows is gleaned from these submissions, with any factual inferences drawn in Warren's favor.

On January 14, 1998 at approximately 7:30 p.m., Warren, who was in custody at the Westchester County Jail, received a visit from his wife in the jail's visiting room (the "Visiting Room"). Casablanca was on duty in the Visiting Room at that time. Orlando and Pietranico were on duty in the search area outside the Visiting Room (the "Search Area").

Warren and his wife were conversing when she pushed his hand away from hers and accidentally knocked her locker key to the floor. She stood up to retrieve the key, at which point Casablanca approached, pointed his finger at her, and told her not to get up out of her seat during a visit. Warren apologized for his wife, but Casablanca told him to shut up. Warren then terminated the visit with his wife, and she left, followed by Casablanca.

Warren got up to leave the Visiting Room. Before an inmate can leave the Visiting Room he has to be searched. There were two or three inmates ahead of Warren waiting to be searched, however, and Warren waited in the Search Area. While he was waiting, Casablanca approached him and told him, "Don't ever tell me how to do my job." Warren re-

<hr>

2. In a letter dated March 16, 2000 the Defendants explained that the Rule 56.2 Notice had been omitted inadvertently from their summary judgment papers.

3. Although Warren did not entitle any portion of his submission a "Rule 56.1 Statement," he is deemed to have met the requirement to submit such a statement since in substance he has done so.

sponded that it was wrong to disrespect Warren or Warren's wife and that was not Casablanca's job. Casablanca told Warren to "Get the fuck out of here" and pushed him in the arm with one hand towards the area where prisoners are strip-searched. According to Warren, this push was not violent but seemed intended more to move him along. Warren told Casablanca, "Please don't put your hand on me."

Casablanca then punched Warren with his right fist on the left side of Warren's face. Immediately after the altercation between Casablanca and Warren began, Orlando, who had been standing behind the clothing counter in the Search Area, intervened by grabbing Warren's in a "bear hug" and holding his arms. In Warren's view, Orlando was trying to get the situation under control. Soon thereafter, Doe, who had been standing by Orlando, also intervened by pulling Warren to the floor and handcuffing him. During the altercation Casablanca punched Warren once or twice more, including at least once while Warren was being restrained by one of the other officers.[4] At some point prior to being handcuffed Warren punched back, hitting Casablanca once and missing him once.[5]

Shortly after Doe had handcuffed Warren, the jail's Emergency Response Team arrived. They cuffed Warren's ankles and dragged him to the booking area to a "bull pen" where he waited to be strip-searched.

He was made to strip in front of both male and female prison officers.

Pietranico tried to get the other inmates in the Search Area dressed and out of the vicinity while the altercation ensued. Later, after Warren had been strip-searched, Pietranico brought Warren his clothes. On top of the pile of clothes was a paper towel on which were written the words, "Happy Birthday Troy Warren, now sleep with the fishes." There is no evidence as to who wrote the note, and by Warren's own account he does not know who authored it.

Warren was seen by a nurse in the Booking area at or about 9:25 p.m. As a result of the altercation Warren sustained abrasions to his face and neck—described as "two superficial scratches" in the examining nurse's notes and by Warren himself as "little scratches"—and a cut inside his mouth in the lower lip area. There is no reference in the nurse's notes to a cut in Warren's mouth or any other injury. The nurse treated him by cleansing the abrasions with an antiseptic ointment but did not apply a Band–Aid or other type of dressing. This was the extent of the treatment rendered.

Warren was transferred to the Keep–Lock Housing Unit subsequent to the incident. He requested a grievance form but did not receive one for several days. He

---

**4.** In his complaint Warren alleges Casablanca punched him after he was handcuffed. In his deposition, however, he testified that the punch occurred while he was being held in a bear hug by Orlando. Drawing all inferences in Warren's favor, it is presumed that Casablanca punched Warren while another officer was in the process of restraining Warren in some fashion, whether by a bear hug or with hand cuffs.

**5.** There is a great deal of uncertainty as to the facts of the altercation between Warren and Casablanca, including the total number and timing of Casablanca's punches, even based on Warren's own recounting. Warren has given varying accounts of the incident in his deposition, a written statement he made on the day of the incident, his Declaration In

Support Of Request To Proceed In Forma Pauperis, and the second amended complaint (which is not, of course, evidence as such). As just one example, the complaint alleges multiple punches but the written statement Warren gave immediately after the incident reflects that Casablanca punched Warren once in the face and then the two "struggled." The version stated herein is based on an especially generous reading of all the submissions in Warren's favor, including the complaint, because he is not only the nonmoving party but is *pro se*. The Defendants aver that virtually all the facts surrounding and involving the altercation with Casablanca are in dispute but contend they are nonetheless entitled to summary judgment.

never filed a grievance regarding the January 14 incident.

On February 24, 1998 Warren sought medical attention for an unrelated rash on his arm, and on March 6 and 17, 1998 he sought medical attention for checks of his blood pressure. He did not seek medical or dental attention regarding any injury to his mouth. According to Warren, any such injury wasn't "a major concern" because he "wasn't thinking about a lawsuit or anything like that to go," he was in keep-lock, and he was under emotional stress because of being denied permission to go to his grandfather's funeral and due to the January 14 incident.

On March 16, 1998 Warren requested a teeth cleaning and check-up. In April 1998 he saw the Westchester County Jail dentist, who informed him that he had periodontal disease and would probably need to have several teeth removed. The dentist's notes reflect that Warren stated to the dentist, "I was in a fight and my front teeth are loose." They also reflect that the dentist diagnosed Warren as suffering from periodontal disease, with 60–70% bone loss, and that there was a possibility he would need to have his front teeth removed. The dentist informed Warren of the periodontal disease and told Warren the dentist couldn't do anything for him, but that he should see a periodontist if he was released from jail.

Some two years later, on January 24, 2000 Warren saw a dentist at the Federal Correctional Institution in Otisville, New York for a check-up. This dentist confirmed the diagnosis of severe periodontal disease and bone loss in his front teeth area and told Warren he needed to have several teeth removed. The dentist's notes reflect a statement by Warren that "I need some x-rays for my lawyer." The notes also refer to a "Hx of trauma to face" [6] but do not indicate the basis for that notation.

6. Presumably "Hx" means "History".

Warren has compiled a "Brutality List" consisting of the names of other inmates whom Warren asserts were subjected to excessive force at the hands of prison officers at the Westchester County Jail. Warren based his list on conversations he had with the inmates listed or with other inmates who said the inmates listed had been victims of such force.

### Discussion

### I. *Exhaustion of Administrative Remedies*

■ It is undisputed that Warren did not file a grievance with the jail prior to filing the instant suit regarding the January 14 incident. Defendants contend that they are therefore entitled to summary judgment because Warren has failed to exhaust his administrative remedies pursuant to the requirements of the Prisoner Litigation Reform Act ("PLRA"). The relevant section of the PLRA provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The Second Circuit has not ruled on whether an Eighth Amendment claim for excessive force is a suit concerning "prison conditions" subject to the mandatory exhaustion requirement of Section 1997e(a), but has observed that the law on this issue "is in great flux." *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir.1999). Indeed, there is a split among those circuit courts that have ruled on the issue as well as among the district courts within this circuit. *See Liner*, 196 F.3d at 135 (discussing split in authority); *Baskerville v. Goord*, No. 97 Civ. 6413, 1998 WL 778396, at *2 (S.D.N.Y. Nov. 5, 1998) (noting "growing split of authority" among district courts).

The Court notes with disapproval that the Defendants through their attorneys, Alan D. Sheinkman, the Westchester County Attorney, and Thomas J. Schrempf, Assistant County Attorney of Counsel, not only fail to acknowledge this split in authority but go so far as to affirmatively represent that the courts within the Southern District of New York have "routinely" held that the exhaustion requirement applies to excessive force claims. That representation, inaccurate to the point of being unethical, is especially problematic where, as here, the Defendants' adversary is *pro se*. A continuation of such conduct would be sanctionable.

Turning to the merits of the exhaustion question, the reasoning of those courts which have found that the exhaustion requirement does not apply to an Eighth Amendment claim for excessive force is persuasive and is adopted herein. *See, e.g., Carter v. Kiernan,* No. 98 Civ. 2664, 1999 WL 14014, at **2–5 (S.D.N.Y. Jan. 14, 1999) (exhaustion requirement does not apply to excessive force claims); *Baskerville,* 1998 WL 778396, at **2–5 (same); *but see, e.g., Cuoco v. U.S. Bureau of Prisons,* No. 98 Civ. 9009, 2000 WL 347155, at **4–6 (S.D.N.Y. March 31, 2000) (exhaustion requirement applies to excessive force claims); *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 892 (S.D.N.Y.1998) (same).

Warren contends that exhaustion is not required because the remedy he seeks, monetary damages, is not authorized under the applicable administrative procedures and therefore is not "available" within the meaning of Section 1997e(a). The Defendants oppose this argument.[7] This issue need not be resolved, however, because as just explained Section 1997e(a) does not apply to Warren's excessive force claim.

## II. *The Summary Judgment Motion Is Granted*

### A. *The Standard For Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.,* 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell,* 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

---

**7.** Contrary to the Defendants' representation in their papers, there is also a great deal of disagreement over the question of when a remedy is "available" and therefore subject to the exhaustion requirement. *See Beeson,* 1998 WL 856294, at *4 (collecting cases).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. *See* Fed.R.Civ.P. 56. A party seeking to defeat a summary judgment motion cannot " 'rely on mere speculation or conjecture as to the true nature of facts to overcome the motion.' " *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (citation omitted).

These standards apply where the plaintiff is *pro se*, however, the court should read the submissions of a *pro se* litigant "liberally and 'interpret them to raise the strongest arguments they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 279 (2d Cir.1999) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).

### B. There Is No Liability On The Part Of The Municipality Or The Individual Defendants In Their Official Capacity

■ Although Warren has not specifically named the County of Westchester as a defendant he has named the Individual Defendants in their official capacities. Warren is therefore deemed to have named the municipality as a defendant because "[t]he real party in interest in an official-capacity suit is the government entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *see also Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73 (2d Cir.1992).

■ Since a municipality can only act through its employees, the question of its liability under Section 1983 turns on whether it can be held liable for any unconstitutional conduct of those employees.[8] Municipal liability under Section 1983 cannot be based on a theory of *respondeat superior*. *See Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404–5, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Rather, the Section 1983 plaintiff must show that the constitutional violation by a municipal employee resulted from a custom, policy, or practice of the municipality. *See Hafer*, 502 U.S. at 25, 112 S.Ct. 358 (citations omitted); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995).

■ A municipal custom, policy, or practice may be shown by establishing that an official who is a final policymaker directly committed or commanded the constitutional violation, or by showing that a policymaker indirectly caused the misconduct of a subordinate municipal employee. *See Monell*, 436 U.S. at 690, 98 S.Ct. 2018; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir.2000). Liability based on indirect causation can be established by showing " 'acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity,' " *see Jeffes*, 208 F.3d at 61 (citation omitted), or a failure by policymakers to train or supervise their subordinates amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees, *see City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ It is undisputed that none of the Individual Defendants are policymakers within the County government. Nor does Warren premise his claim on the theory that County policymakers directly committed or commanded the use of excessive

---

**8.** For purposes of determining whether Warren has made a sufficient showing as to municipal liability it will be presumed that his constitutional rights were violated by one or more of the Individual Defendants. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (discussing separate character of inquiry into municipal liability and inquiry into whether constitutional violation occurred).

force.[9] Instead, Warren contends that the use of excessive force is so widespread within the Westchester County Jail that it rises to the level of a custom in which the municipality has acquiesced.

Warren avers that he "will demonstrate" this alleged municipal practice at trial by eliciting testimony from inmates named in his Brutality List. The Brutality List consists of names of other inmates at Westchester whom Warren alleges were victims of excessive force. Warren explained in his deposition that he based his list either on his own conversations with the inmates named or on conversations with other inmates who said the named inmates had been the victim of force at the hands of a Westchester County Jail official.

Neither the Brutality List nor Warren's deposition testimony are sufficient to meet Warren's evidentiary burden to defeat a motion for summary judgment. Both the list and testimony by Warren as to incidents involving other inmates, based on accounts by those inmates or on third-hand accounts from still other inmates, would be inadmissible hearsay at trial if offered to prove those incidents occurred. Thus, Warren essentially offers nothing more than his own conjecture as to what the evidence at trial "will demonstrate." Speculation and conjecture, however, are not sufficient to defeat a motion for summary judgment. *See Lipton*, 71 F.3d at 469.

Warren could have submitted sworn declarations or affidavits by the inmates identified in his Brutality List as to the incidents in question. Such statements could have been considered in deciding this summary judgment motion because, although the statements themselves would be hearsay if offered at trial, such statements are evidence of what the declarants or affiants will testify at trial. Warren failed, however, to submit any such material. This failure cannot be excused on the ground that he is *pro se* because he was properly notified pursuant to Local Rule 56.2 as to the need to submit evidence, such as witness statements and documents, in order to defeat the Defendants' summary judgment motion.

Thus, although the Defendants' insistence that Warren can only prevail if he witnessed the incidents involving other inmates first hand is manifestly incorrect, Warren has nonetheless failed to meet his burden to show evidence of a widespread practice of excessive force at the jail.

Warren's papers also reference a "fail[ure] to supervise" on the part of the County as a basis for municipal liability. He has offered no evidence, however, of such a failure, and the mere recitation of this allegation is not sufficient. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 832, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (Section 1983 plaintiff alleging failure to supervise or train must put forward evidence that municipality has acted or consciously not acted in this regard); *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992) (same). Nor will a single incident, especially if it only involves actors below the policymaking level, generally suffice to raise an inference of a policy of inadequate supervision or training. *See Tuttle*, 471 U.S. at 830, 105 S.Ct. 2427; *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Indeed, the highest ranking officer involved in the January 14 incident, Sergeant Orlando, acted appropriately by try-

---

**9.** Warren would bear the burden of establishing that one or more of the individual defendants is a policymaker if that were his theory for municipal liability. *See Jeffes*, 208 F.3d at 57–58. Nonetheless, because Warren is *pro se* the Court has examined the record to determine if such a theory is tenable. The Defendants have represented without contradiction that the hierarchy within the Department of Corrections is as follows: Corrections Officer, Sergeant, Captain, Assistant Warden, Associate Warden, Chief of Operations, Deputy Commissioner, and Commissioner. Casablanca, Pietranico, and Doe are all Correctional Officers. Orlando is a Sergeant. There is no basis on this record for concluding that any of these individuals occupies a policymaking position.

ing, as Warren put it, to "get the situation under control".

Therefore, Warren's claims against the County and the Individual Defendants in their official capacity must be dismissed.

### C. There Is No Personal Liability On The Part Of The Individual Defendants

Warren has also sued the Individual Defendants in their individual or personal capacity. Even where the municipality is not liable, and its employees are not liable in their official capacity, those employees may be personally liable under Section 1983 for their unconstitutional conduct. *See Hafer*, 502 U.S. at 25–26, 112 S.Ct. 358. As explained below, however, Warren has not met his burden to sustain the claims against the Individual Defendants.

■ The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, including the " 'unnecessary and wanton infliction of pain.' " *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir.1999) (*quoting Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).[10] In order to establish a constitutional violation under the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective component. *See Hudson v. McMillian*, 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The objective component requires that the alleged violation be "sufficiently serious" by objective standards. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This component is "context specific, turning upon 'contemporary standards of decency.' " *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999) (citations omitted). The subjective component requires that the inmate show that the prison officials in-

volved had a "wanton" state of mind when they engaged in the alleged conduct. *Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995; *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.1994).

■ Specifically, the factors to be weighed in determining whether there has been an unconstitutional application of excessive force include:

> The need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.

*Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *see also Hudson*, 503 U.S. at 7, 112 S.Ct. 995 (accord).

■ It is not necessary that the inmate have suffered significant injury in order to prevail on an Eighth Amendment claim because a malicious use of force to cause harm is per se a violation of the Eighth Amendment. *See Griffin*, 193 F.3d at 91 (*citing Blyden*, 186 F.3d at 263). Nonetheless, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). Thus, not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995. A *de minimis* use of force generally does not suffice to state a constitutional claim. *See Griffin*, 193 F.3d at 92.

---

10. Warren also asserts that his rights under the Fourteenth Amendment were violated. The Fourteenth Amendment, however, is inapposite because it applies to claims of excessive force by pretrial detainees, while the Eighth Amendment is the vehicle for exces-

sive force claims by inmates such as Warren. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (citations omitted) (explaining application of Fourteenth and Eighth Amendments to claims of pretrial detainees versus prisoners, respectively).

## 1. *Casablanca*

■ The facts surrounding the altercation between Casablanca and Warren are conceded by the Defendants to be in dispute. By contrast, there is no genuine dispute over the degree of injury suffered by Warren. Although as explained below he has alleged various injuries, including "broken bones" in his mouth, the only injuries actually supported by the record are two scratches to his face—described by the examining nurse as "superficial" and by Warren himself as "little"—and a cut inside his mouth in the lower lip area.[11]

Generally speaking, a dispute over the facts of an altercation in which a prison guard used force on an inmate would preclude summary judgment on an Eighth Amendment claim. Moreover, significant injury is not required in order to prevail on such a claim. *See Griffin,* 193 F.3d at 91. In this case, however, the extremely slight degree of injury weighs heavily towards the conclusion that the degree of force was *de minimis. See Bove v. New York City,* No. 98 Civ. 8800, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (dismissing on summary judgment excessive force claim where only injury supported by evidence was single bruise to head so that force deemed *de minimis* as matter of law). In addition, there is no evidence either in Warren's deposition testimony or elsewhere in the record that he suffered pain as a result of the incident, weighing further against his claim. *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (dismissing Eighth Amendment claim on summary judgment where plaintiff alleged being bumped, grabbed, elbowed, and pushed, but did not maintain that he experienced pain or injury).

Warren's second amended complaint alleges other injuries, namely, "bruises" and a "gap" in his teeth. He also testified at his deposition that he suffered "broken bones" in his gum line. With respect to the bruises, at Warren's deposition he admitted that he was using the word "bruises" to describe the scratches on his face. With respect to Warren's teeth, the record does indicate that the condition of Warren's teeth is quite poor. However, rather than supporting his allegation that this condition resulted from the January 14 incident, it shows instead that he suffers from severe periodontal disease.

In the months after the January 14 incident Warren sought medical treatment for a rash and a blood pressure check, as well as a dental check-up and cleaning. However, he neither sought treatment for nor complained of the dental injuries he now alleges to have suffered. Warren did not seek dental care again for another two years, at which time he sought and received another dental check-up at the Otisville federal prison.

The record does not support Warren's allegation that he was diagnosed as having suffered damage to his teeth, including "broken bones," due to the January 14 incident. On the contrary, the Westchester County Jail dentist who saw him two months after the incident told Warren that he had severe periodontal disease and that it would get worse over time. The dentist's notes reflect that Warren made a statement about being in a fight, but they do not reflect a diagnosis by the dentist himself that the condition of Warren's teeth was related to that incident.

Similarly, when Warren saw the dentist at Otisville two years later, the dentist confirmed the diagnosis of severe periodontal disease and told Warren he would have to have several of his teeth pulled as a result. The dentist's notes also indicate a statement by Warren that he wanted "x-rays for my lawyer," as well as a notation of a history of "trauma" to Warren's face. There is no indication, however, that this

---

11. The examining nurse noted only the scratches. Warren testified in his deposition, albeit with some lack of clarity, that he also had a cut in his mouth. Although the evidence as to the cut is extremely thin it is possible that a reasonable jury would find it credible.

notation was based on the dentist's own examination, rather than simply being a reflection of a statement by Warren. Nor is there any indication that the Otisville dentist diagnosed the condition of Warren's teeth as related to the altercation with Casablanca two years earlier. Indeed, by Warren's own account the topic of the dentist's discussion with him was his severe periodontal disease.

Finally, Warren's allegation as to his teeth is undercut still further by his concession that he did not seek care for his alleged dental injuries because he "wasn't thinking of a lawsuit or anything like that to go." In sum, the evidence in the record not only fails to support but actually contradicts Warren's allegations as to his injuries. His injuries are *de minimis* as a matter of law.

Nor does the remainder of the record, interpreted in the light most favorable to Warren, make a sufficient showing to establish excessive force. It must be remembered that not every malevolent touch by a guard gives rise to an Eighth Amendment violation. *See Hudson,* 503 U.S. at 9, 112 S.Ct. 995. The record does not show that Casablanca's acts, even if malevolent, constituted a malicious or sadistic effort to inflict harm. *See Reid v. Coughlin,* III, No. 86 Civ. 1351, 1994 WL 23152, at *4 (S.D.N.Y. Jan. 26, 1994) (prison guard's slamming of plaintiff against wall, even if malevolent, did not have constitutional significance); *DeArmas v. Jaycox,* No. 92 Civ. 6139, 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (malicious purpose not shown where guards allegedly swore at inmate, punched him once, kicked him once, and as result inmate suffered from bruise and injured right knee). Therefore, consideration of the injuries suffered and other evidence shows that Casablanca's use of force was *de minimis.* Warren's claim for excessive force against Casablanca is dismissed as a matter of law.

■ Finally, because the injuries suffered by Warren were *de minimis,* to the extent he alleges a claim for emotional distress that claim is also dismissed. Under the PLRA a claim for emotional distress requires a prior showing of "physical injury." *See* 42 U.S.C. § 1997e(e). Although the statute does not define "physical injury," the developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than *de minimis. See Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997) (physical injury required as predicate for emotional distress claim must simply be more than *de minimis* ); *Leon v. Johnson,* No. 97–CV–6041, 2000 WL 674698, at *3 (W.D.N.Y. May 22, 2000) (accord); *cf. Liner,* 196 F.3d at 135–136 (inmate stated claim for emotional distress where alleged physical injury was more than *de minimis* ). That view is adopted here and Warren's claim is dismissed on this ground.

### 2. *Orlando*

It is undisputed that Orlando intervened in the altercation between Warren and Casablanca by grabbing Warren's arms or putting him in a "bear hug." According to Warren himself, Orlando's purpose in intervening was to "get the situation under control." Yet Warren also claims that Orlando violated his constitutional rights by restraining him while Casablanca continued to hit him. Consideration of the factors set forth in *Whitley* and *Hudson* to determine whether force was employed in good faith, rather than in violation of the Eighth Amendment, shows otherwise. *See Whitley,* 475 U.S. at 319, 106 S.Ct. 1078; *Hudson,* 503 U.S. at 7, 112 S.Ct. 995 (accord).

■ First, given that a physical altercation between Casablanca and Warren had ensued when Orlando stepped in, the need for some use of force by Orlando is apparent. *See Whitley,* 475 U.S. at 319, 106 S.Ct. 1078. Second, the degree of force employed was commensurate with the situation, as it represented an attempt

to restrain the inmate and prevent a further escalation of the altercation. *See id.* The fact that Warren punched Casablanca even after Orlando stepped in is a further indication that the degree of force was not excessive, since Orlando's hold on Warren was not even sufficient to keep him restrained the entire time. Third, there is no allegation that Orlando injured Warren. *See id.* Finally, as Warren himself recounts, Orlando intervened in order to get the situation in control, which is an appropriate motivation for the use of force by a prison guard. Therefore, Orlando's use of force must be deemed a good faith effort to restore discipline, rather than a violation of the Eighth Amendment, and Warren's claim fails a matter of law.

### 3. *Pietranico*

Warren does not allege that Pietranico used any force against him. Instead, he alleges that Pietranico tried to get other inmates out of the vicinity during the altercation. Thus, there is no claim against Pietranico for excessive force.

■ Warren also holds Pietranico responsible for the handwritten note sitting on top of Warren's clothes which Pietranico brought to him after he had been strip-searched. According to Warren, the note, which read "Happy Birthday, Troy Warren, now sleep with the fishes," was a threat on his life. A claim against Pietranico based on these allegations fails as a matter of law. First, mere allegations of verbal abuse or threats by a correctional officer to a prisoner are not cognizable under Section 1983. *See Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). Second, there is no evidence that Pietranico wrote the note. Indeed, Warren admits that he does not know who wrote it but simply states that he holds Pietranico responsible since it was on top of the clothes Pietranico was carrying.

### 4. *The Claim For Mental Distress Of Warren's Wife*

■ Warren claims that his wife suffered mental distress due to the way in which Casablanca spoke to her in the Visiting Room. Warren's claim for mental distress suffered by his wife due to her encounter with Casablanca is not cognizable under Section 1983 because it is not a claim for a deprivation of a right, privilege, or immunity enjoyed by Warren under by the Constitution or the laws of the United States. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore this claim is dismissed.

### III. *The Motion To Amend The Complaint*

■ Warren has moved for an order permitting him to file a third amended complaint to add Correctional Officer Joseph Downey ("Downey") as a named defendant in lieu of the "John Doe(1)" defendant previously listed.

Although leave to amend a complaint should be "freely given when justice so requires," Fed.R.Civ.P. 15(a), amendment is not warranted where it would be futile. *See Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). In this case, amendment would be futile because an Eighth Amendment claim against defendant Doe—whom Warren has now identified as being Downey—must fail as a matter of law.

The allegation against Doe is that he handcuffed Warren after the altercation between Casablanca and Warren had ensued. The evidence shows that Doe's use of force, like Orlando's, was directed at getting the situation under control. There is no evidence that Doe restrained Warren so that Casablanca could punch him—even assuming Casablanca did punch Warren after he was handcuffed, as Warren alleges in the complaint but for which allegation there is no evidence in the record. Thus, Doe's use of force is indistinguishable from that employed by Orlando and does not constitute a violation of Warren's constitutional rights.

Therefore, amendment of the complaint to add Downey would be futile since an Eighth Amendment claim against him would have to be dismissed as a matter of law. Warren's motion to file a third amended complaint is denied.

## IV. *The Motion For Additional Discovery*

Warren filed his motion to compel based on the Defendants' responses to Warren's previous discovery requests, including a Request for Production of Documents and a First Set of Interrogatories. The challenge raised in Warren's motion to compel concerns Defendants' responses to one of the items in the request for documents and to one of the items in the request for interrogatories, respectively.

With respect to the production of documents, the nature of Warren's challenge is not entirely clear. The challenge that can be discerned, however, is not sustainable. Warren's motion to compel includes a request that is slightly different from, but largely overlaps with, a request included in his Request for Production of Documents. Both requests concern documentation of any other allegations or incidents involving the use of excessive force by the Individual Defendants. The Defendants responded to this item in the Request For Production Of Documents by stating that there were no documents in their possession, custody, or control that were responsive to the request. The slightly reconfigured request contained in the motion to compel, to the extent that it seeks discoverable material, is duplicative of the Request For Production Of Documents to which the Defendants have already responded. Therefore, the motion to compel further production of documents is denied.

With respect to the interrogatories, the Defendants had previously objected that interrogatory number three, which seeks "the rank, years of service, age, height, weight, and ethnicity of each indi-

vidual identified in interrogatory number one," [12] is irrelevant, beyond the scope of Local Civil Rule 33.3, and in part not reasonably calculated to lead to the discovery of admissible evidence. In response to the motion to compel the Defendants nonetheless provided the requested information as to the Individual Defendants. There is no basis for requiring the Defendants to provide the requested information as to the other officers. Therefore, the motion to compel insofar as it pertains to Warren's interrogatories is also denied.

## V. *The Motion For Appointment Of Counsel*

Warren's request for the appointment of counsel is rendered moot by the granting of summary judgment to the Defendants and dismissal of his complaint.

### *Conclusion*

For the reasons explained above, Warren's motions for further discovery, to file a third amended complaint, and for appointment of counsel are denied, and the Defendants' motion for summary judgment is granted and the complaint in this action is dismissed in its entirety.

It is so ordered.

---

12. Interrogatory number one sought the identity of all the officers who witnessed or investigated the January 14 incident or who were assigned to the area at or about the time of the incident.