**Ruben M. WARREN, Plaintiff,**

v.

**Frank E. IRVIN, Superintendent at Wende Correctional Facility and M.J. Guenther, Captain at Wende Correctional Facility, Defendants.**

No. 94–CV–6252L.

United States District Court,
W.D. New York.

Dec. 2, 1997.

*DECISION AND ORDER*

LARIMER, Chief Judge.

Plaintiff, Ruben M. Warren ("plaintiff"), acting *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants, Superintendent Frank E. Irvin ("Irvin"), Captain M.J. Guenther ("Guenther"), Hearing Officer J. Kihl ("Kihl"), and Hearing Officer J.P. O'Connor ("O'Connor") (collectively "defendants"), violated his constitutional rights while he was incarcerated at the Wende Correctional Facility. Pending before me are the parties' motions for summary judgment.

## BACKGROUND

On May 30, 1991, plaintiff was removed from his general population cell and placed in the Special Housing Unit ("SHU"), allegedly for attacking a corrections officer. Thereafter, O'Connor conducted a Tier III disciplinary hearing regarding the incident. Plaintiff claims that O'Connor did not allow him to present certain witnesses or evidence and that he failed to provide plaintiff with copies of the documents that were being used against him. At the conclusion of the hearing, O'Connor found plaintiff guilty and imposed a punishment of twenty-four months in SHU, twenty-four months loss of good time credits, and twenty-four months loss of telephone, package, commissary, earphone, television, movie, and third-shower privileges.

Plaintiff appealed the disposition, claiming that his due process rights had been violated. By order dated July 30, 1991, plaintiff's hearing decision was reversed because not all of the witnesses' testimony had been properly recorded, and a rehearing was required to be commenced within seven days of receipt of the order and to be completed within fourteen days. Plaintiff complained to defendant Guenther about his continued confinement in SHU after the decision had been reversed, but, according to plaintiff, Guenther ordered him to remain in SHU pending the rehearing.

Plaintiff claims that when Irvin made the rounds in SHU on August 16, 1991, plaintiff informed him that he had been in SHU for fifteen days and there had been no rehear-

Ruben M. Warren, Yonkers, NY, pro se.

Elizabeth J. McDonald, Carlos Rodrigues, Charles J. Genese, Office of New York State Atty. Gen., Rochester, NY, for Defendants.

ing. According to plaintiff, Irvin said he would look into the matter. That evening, a rehearing was commenced before defendant Kihl.

Plaintiff maintains that he informed Kihl that the rehearing violated his due process rights because it was not timely. Plaintiff also alleges that Kihl denied him the right to have an assistant and to call witnesses. At the conclusion of the rehearing, Kihl found plaintiff guilty and imposed the same penalties that had been imposed after the first hearing.

Plaintiff again appealed this disposition, claiming that his due process rights had been violated. On November 6, 1991, the decision was reversed because the rehearing was not timely held. The underlying incident and the charge were expunged from plaintiff's record. In total, plaintiff was confined in SHU for 161 days on the charges stemming from the May 30, 1991 incident.[1]

Plaintiff also alleges that for three days while he was housed in SHU, he was denied food and water, and the lights in his cell were turned off. Plaintiff also claims that at this time, Irvin required all SHU inmates to keep their personal property on the floor of their cells. Plaintiff maintains that on August 5, 1991, when he was weak from not receiving meals and water and while his cell lights were turned off, he slipped and fell on paper that was on the floor of his cell and cut his arm on the cell door.

Plaintiff commenced this action, alleging that defendants' conduct violated his constitutional rights. Specifically, plaintiff's complaint asserts a Fourteenth Amendment claim against Irvin, Guenther, Kihl, and O'Connor and an Eighth Amendment claim against Irvin relating to the incident in plaintiff's cell on August 5, 1991 when plaintiff fell and injured himself.[2]

1. Initially, plaintiff claimed that he was held in SHU after the reversal and expungement until April 9, 1992, for a total of 318 days. However, the evidence before me—submitted by both the plaintiff and defendants—establishes that plaintiff was only held in SHU on the charges stemming from the May 30, 1991 incident until the reversal and expungement. The time plaintiff spent in SHU after that date was attributable to other unrelated disciplinary infractions.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may be reasonably drawn from the facts must be viewed in the light most favorable to the non-moving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991). To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

On May 23, 1995, plaintiff served a Request for Admissions on defendants. To date, defendants have not responded. Plaintiff moves for summary judgment, arguing that the Court should deem the matters admitted, and, therefore, there is no genuine issue of fact for trial. Defendants cross-move for summary judgment on the merits.

### B. Plaintiff's Motion for Summary Judgment

■ Plaintiff moves for summary judgment on the ground that defendants have

2. In his complaint, plaintiff alleges that his claims are brought against the defendants in both their official and individual capacities. To the extent plaintiff's claims are brought against defendants in their official capacities, they are barred by the doctrine of sovereign immunity. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir.1996). Therefore, the Court will analyze plaintiff's claims only to the extent that they are brought against defendants in their individual capacities.

failed to respond to his Request for Admissions. Plaintiff argues that these matters should be deemed admitted and that judgment should be entered in his favor.

While this Court certainly does not condone the defendants' failure to respond to plaintiff's Request for Admissions, the Second Circuit has expressed a strong preference for adjudicating cases on the merits. *See Brien v. Kullman Indus., Inc.,* 71 F.3d 1073, 1077 (2d Cir.1995); *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). Therefore, I deny plaintiff's motion for summary judgment based on defendants' failure to respond.

## C. Defendants' Motion for Summary Judgment

### 1. Fourteenth Amendment Claim

Plaintiff argues that defendants' actions in connection with his disciplinary hearings and SHU confinement violated his due process rights.[3] Defendants move for summary judgment on the ground that plaintiff was not deprived of a liberty interest and, therefore, was not entitled to procedural due process protections. Alternatively, defendants argue that even if plaintiff possessed a liberty interest, he was afforded the appropriate due process.

The Fourteenth Amendment to the United States Constitution prohibits, *inter alia,* the deprivation of liberty without due process of law. The two threshold questions on any claim for denial of procedural due process are whether plaintiff possessed a constitutionally protected liberty interest and, if so, what process was due before plaintiff could be deprived of that interest. *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995).

In *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the Supreme Court held that disciplinary confinement does not implicate a liberty interest unless that confinement "imposes

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin* did not, however, "create a *per se* blanket rule that disciplinary confinement may never implicate a liberty interest." *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997). Rather, district courts are required to make factual findings with respect to the conditions of confinement at issue in each case. *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997); *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997); *Miller,* 111 F.3d at 9. The duration of the inmate's disciplinary confinement is relevant to this factual inquiry, as is the restrictiveness of the conditions imposed in relation to the prevailing conditions in the prison at large. *Brooks,* 112 F.3d at 47–49.

Here, plaintiff alleges that as a result of defendants' unconstitutional conduct, he was denied certain privileges, deprived of good-time credits, and detained in SHU for 161 days. I do not believe that any of the "punishments" imposed in this case, under all the circumstances, implicated a liberty interest cognizable under the Fourteenth Amendment, and, therefore, plaintiff's complaint must be dismissed.

■ The temporary loss of the various privileges alleged in this case—*e.g.,* telephone, package, commissary, earphone, movie, television, and third-shower—does not represent the type of deprivation which could reasonably be viewed as imposing atypical and significant hardship on an inmate. *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); *Brooks v. DiFasi,* 1997 WL 436750, at *3 (W.D.N.Y. July 30, 1997) (on remand) (loss of recreation, package, commissary, special events, and telephone privileges did not amount to an atypical and significant deprivation). Although plaintiff was denied certain privileges in SHU that inmates in the general population enjoy, the conditions of

---

**3.** Plaintiff's disciplinary hearing determinations have been invalidated on administrative appeal. Accordingly, the Supreme Court's recent decision in *Edwards v. Balisok,* —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), does not apply to the instant action. In *Edwards,* the Supreme Court held that an inmate's claim for

damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the inmate would necessarily imply the invalidity of his disciplinary conviction or sentence, unless the inmate can demonstrate that his disciplinary conviction or sentence has previously been invalidated.

his confinement fell "within the expected parameters of the sentence imposed by a court of law," *Frazier*, 81 F.3d at 317 (quoting *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2300), and the loss of the various "privileges" does not alter that.

■ Plaintiff's temporary loss of good-time credits also did not deprive him of a liberty interest. It is well settled that where, as here, an inmate's good-time credits are completely restored after a successful administrative appeal and before their loss could have any impact on the duration of the inmate's sentence, no liberty interest is implicated. *Beaman v. Coombe*, 1997 WL 538833, at *4 n. 3 (S.D.N.Y. Aug.29, 1997); *Cespedes v. Coughlin*, 956 F.Supp. 454, 472–75 (S.D.N.Y.1997).

■ I turn now to the more difficult issue of whether plaintiff's 161 days in SHU constituted atypical and significant hardship in relation to the ordinary incidents of prison life and, therefore, implicated a liberty interest. I find, as discussed below, that plaintiff's SHU confinement did not present a dramatic departure from the basic conditions of his confinement either in duration or restrictiveness of conditions. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2300; *Brooks*, 112 F.3d at 47–49.

Plaintiff was convicted of robbery in the first degree in 1988 and is currently serving an indeterminate sentence of six to twelve years. With respect to the duration of his confinement in SHU, plaintiff spent a little over five months there. Lengthy disciplinary confinement is prevalent in New York State prisons. In fact, New York law imposes no limit on the amount of SHU time that may be imposed for Tier III infractions. 7 NYCRR § 254.7(a)(1)(iii). As of March 17, 1997, there were 1,626 inmates in SHU for disciplinary reasons. Affidavit of Anthony J. Annucci ("Annucci Aff .") ¶ 24. Of those inmates, 28 had SHU sentences of 59 days or less; 129 had SHU sentences of 60–119 days; 127 had SHU sentences of 120–179 days; 545 had SHU sentences of 180–365 days; and 797 had SHU sentences exceeding 365 days.

Annucci Aff. ¶ 24. These statistics suggest that lengthy confinement in SHU—for periods longer than plaintiff's stay—is a normal element of the New York prison regime.

Further, in this Circuit, courts have ruled that lengthy periods of disciplinary confinement do not impose "atypical and significant hardship" within the meaning of *Sandin*. *See e.g., Brooks*, 1997 WL 436750, at *4 (on remand) (no liberty interest in avoiding 180 days confinement); *Trice v. Clark*, 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996) (no liberty interest in avoiding 150 days confinement). Accordingly, I find that plaintiff's confinement in SHU for a little over five months, standing alone, does not present the type of atypical and significant deprivation in which a state may conceivably create a liberty interest. *Sandin*, 515 U.S. at 486, 115 S.Ct. at 2301.

■ With respect to the restrictiveness of the conditions over that five month period, I do not find that these conditions imposed atypical and significant hardship in relation to the ordinary incidents of prison life. Special Housing Units consist of "single-occupancy cells grouped so as to provide separation from the general population." 7 NYCRR § 300.2(b). Inmates may be placed in SHU as a result of a disciplinary hearing, *id.* § 301.2(a), for administrative reasons, *id.* §§ 301.3, 301.4, for protective custody, *id.* § 301.5, for keeplock confinement, *id.* § 301.6, or for any other reason, *id.* § 301.7. All inmates placed in SHU experience essentially the same basic conditions of confinement.[4] For example, all SHU inmates are allowed two showers per week, *id.* § 304.5(a), and one hour of outdoor exercise per day, *id.* § 304.3. All inmates in SHU are entitled to unlimited legal visits and one non-legal visit per week. *Id.* § 302.2(j)(1)(i). All SHU inmates are allowed to receive and send privileged or personal correspondence. *Id.* § 302.2(i). All inmates in SHU have access to counseling services on a daily basis. *Id.* § 304.10. All SHU inmates are given an opportunity to participate in a cell study program, to the extent possible based on overall

---

4. Given their unique status, protective custody inmates, however, receive certain additional privileges. 7 NYCRR § 330.4.

behavioral adjustment. *Id.* § 304.11. Counselors, teachers, or other appropriate staff members may visit SHU inmates to provide assistance in this regard. *Id.* All inmates in SHU have daily access to sick call. *Id.* § 304.4(c). All SHU inmates are permitted to received books and periodicals from both the law library, *id.* § 304.7, and the general library, *id.* § 304.12. Therefore, the conditions of disciplinary confinement, with insignificant exceptions, essentially mirror those conditions imposed on inmates housed in SHU for administrative or other reasons .[5] *Sandin,* 515 U.S. at 486, 115 S.Ct. at 2301.

The conditions of confinement in SHU also are not dramatically different from those experienced in the general population. For example, as stated previously, all inmates in SHU are allowed one hour of outdoor exercise daily. *Id.* § 304.3. This is the same amount of time allotted for exercise to general population inmates, *id.* § 320.3(d)(2), and is in full compliance with constitutional requirements. *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985). SHU inmates are allowed a minimum of two showers per week, 7 NYCRR § 304.5(a), while general population inmates are allowed three showers per week, *id.* § 320.3(d)(1). SHU inmates are confined to their cells approximately twenty-three hours a day. General population inmates are confined to their cells approximately twelve hours a day during the week and even more on the weekends.[6] Annucci Aff. ¶¶ 17–18. Thus, conditions at New York correctional facilities involve a significant amount of lockdown time even for inmates in the general population.

Further, conditions more restrictive than those typically encountered by the general prison population are an ordinary part of the regime of incarceration. For example, the Superintendent may confine an inmate "in a cell or room ... for such period as may be necessary for maintenance of order and discipline." N.Y. Correct. Law § 137(6). The Superintendent also may detain inmates from the general prison population in their cells and suspend shower and exercise privileges at any time for the safety and security of the facility. 7 NYCRR § 320.3(d)(5). General population inmates' out-of-cell time also may be temporarily curtailed for non-disciplinary reasons, such as when: (1) inmates are in idle status because of the unavailability of programming or their refusal to program; (2) inmates are in the reception company at a new facility awaiting evaluation and assessment; and (3) inmates are unable to program for medical or mental health reasons. Annucci Aff. ¶ 25. Therefore, based on a comparison between inmates inside and outside disciplinary confinement, the state's action in placing plaintiff in SHU for 161 days did not work a major disruption in his environment. *Sandin,* 515 U.S. at 486, 115 S.Ct. at 2301.

Plaintiff has not challenged any of the proffered characteristics of SHU and simply has not alleged any facts that would support a finding that the conditions in SHU were dramatically different from the basic conditions of his confinement. *Sims v. Artuz,* 1997 WL 527882, at * 10 (S.D.N.Y. Aug.25, 1997). In short, the regime to which plaintiff was subjected as a result of his disciplinary hearings—both in duration and degree of restriction—was within the range of confinement to be normally expected for one serving

---

**5.** There are two minor exceptions worthy of note. First, disciplinary admissions must complete a thirty-day period of satisfactory adjustment before they are eligible for additional in-cell items and commissary privileges. 7 NYCRR §§ 303.1, 303.2, 303.3. SHU "administrative" admissions receive these privileges from the beginning of their confinement. *Id.* §§ 301.4(c), 301.6(g), 301.7(b). Second, non-disciplinary admissions have their status reviewed every seven days for the first two months and every thirty days thereafter. *Id.* § 301.4(d). This review evaluates the need for continued SHU confinement, but does not affect the conditions of confinement in any way. Disciplinary admissions do not receive this review because they are serving a specific SHU

sentence imposed as punishment for a disciplinary infraction. Accordingly, there is essentially no reason to review the "need" for continued confinement. I do not find that either of these exceptions is significant in determining whether lengthy disciplinary confinement constitutes atypical and significant hardship.

**6.** General population inmates usually spend their out-of-cell time at programs or at meals. While the inmates in SHU are unable to attend programs and meals, they do have an opportunity to participate in a cell study program and are provided with all of their meals in the SHU setting.

an indeterminate term of six to twelve years. *Sandin,* 515 U.S. at 487, 115 S.Ct. at 2302.

For the foregoing reasons, plaintiff's SHU confinement does not give rise to a liberty interest sufficient to support a due process claim.[7] Accordingly, summary judgment is granted on plaintiff's Fourteenth Amendment claims against Irvin, Guenther, Kihl, and O'Connor.

### 2. Eight Amendment Claim

Plaintiff asserts an Eighth Amendment claim against defendant Irvin for the injuries he allegedly suffered while confined in SHU. Plaintiff maintains that these injuries were caused by the deprivation of food, water, and lighting, as well as Irvin's policy which required all SHU inmates to store their personal property on the floor. Defendant Irvin moves for summary judgment on the ground that plaintiff is unable to establish an Eighth Amendment violation.

 The Eighth Amendment to the United States Constitution protects inmates from the infliction of cruel and unusual punishment. Prison officials, therefore, have a duty under the Eighth Amendment to provide humane conditions of confinement. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Consistent with that duty, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must take reasonable measures to guarantee inmate safety. *Id.* The Eighth Amendment, however, "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), and does not provide relief for perceived acts of negligence on the part of prison officials.

To prevail on an Eighth Amendment claim based on prison conditions, an inmate must establish both an objective and a subjective element. Objectively, the deprivation must be "sufficiently serious." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991)). In other words, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). Subjectively, the prison official must have acted with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323). In cases involving prison conditions, that state of mind is one of "deliberate indifference." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977 (quoting *Wilson,* 501 U.S. at 302–03, 111 S.Ct. at 2326–27). A prison official's conduct does not rise to the level of deliberate indifference unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978. In other words, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The subjective element "entails something more than mere negligence." *Id.* at 835, 114 S.Ct. at 1977.

 I find that plaintiff is unable to establish either the objective or the subjective element of his Eighth Amendment claim. Objectively, I find that the prison conditions complained of here were not sufficiently serious to raise an Eighth Amendment issue. Subjectively, there are simply no facts before ·me suggesting .that Irvin acted with a sufficiently culpable state of mind.

Plaintiff alleges, in a conclusory fashion, that his injuries were caused, in part, by the deprivation of water and food for three days prior to his fall. The evidence before me does not support this allegation. On August 4, 1991, plaintiff apparently was deprived of water because he was flooding the gallery and was throwing garbage out of his cell onto the gallery. Deprivation Order dated August 4, 1991. On that same day, plaintiff also was deprived of the evening meal—one meal—because he refused to return the tray and cups from his previous meal. Deprivation Order dated August 4, 1991. The requirement of returning trays and cups before

---

7. Because I find that plaintiff did not possess a liberty interest, it is unnecessary for me to discuss the procedural protections that were afforded.

receiving the next meal is designed to reduce the number of incidents of inmates throwing water, feces, urine, food, and other items out of their cell—a practice that plaintiff allegedly engaged in on that very same day. Plaintiff does not dispute the accuracy of these deprivation orders or allege that there were any additional deprivations.

I find that, under the circumstances, these deprivations are not sufficiently serious to constitute cruel and unusual punishment under the Eighth Amendment. *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (recognizing that no court has explicitly held that denial of food is a *per se* violation of an inmate's Eighth Amendment rights); *Moss v. Ward*, 450 F.Supp. 591, 596 (W.D.N.Y.1978) (recognizing that deprivation of one or two meals may not be cruel and unusual punishment).

■ Further, although the Superintendent's Office received copies of the two deprivation orders on the date of plaintiff's fall, there is simply no evidence before me that defendant Irvin had any knowledge of these deprivations *prior* to plaintiff's fall so as to attribute to him deliberate indifference to plaintiff's health and safety.

■ Plaintiff also alleges that his injuries were caused, in part, by Irvin's policy requiring SHU inmates to keep their personal property on the floor and the deprivation of lighting in his cell. According to Irvin, SHU inmates were able to store their limited amount of property under their beds or on the shelves in their cells. Affidavit of Frank E. Irvin ("Irvin Aff.") ¶ 51. Further, Irvin claims that if an inmate had excess allowable property, the inmate could have requested that the items be stored with his other property, which would be returned to him after his release from the SHU. Irvin Aff. ¶ 51.

Assuming, however, for the purposes of this motion that Irvin did require inmates to store their property on the floor, I still do not find that this is a sufficiently serious condition implicating Eighth Amendment cruel and unusual · punishment concerns. Plaintiff also claims, in a very conclusory fashion, that the lights were off in his cell at the time of his fall. He does not claim, however, who turned them off, why they were turned off, or for how long they had been turned off. There is no basis for a claim against Irvin on these facts.

More important, however, is the fact that plaintiff does not allege that Irvin acted with deliberate indifference. For example, plaintiff states in his complaint: "Plaintiff received 40 sutures while unlawfully confined to SHU in Wende Correctional Facility, from the *negligent* of defendant Irvin, having my lights turn off and making prisoners in SHU to put all of their legal work and letters, books, magazines, clothing: pants, shirt, workshirt, etc. All property is on the floor. I slip on some property that was on the floor and hit my head and cuted my arm on the cell door." Complaint ¶ 24. Plaintiff also alleges in his complaint: "Defendant Irvin, was notified of the *negligent* of prisoner's property on the floor because there is no place else to put any items which caused plaintiff to receive 40 sutures. Defendant Irvin violated plaintiff's 8th Amendment rights of the U.S. Constitution." Complaint ¶ 30. To establish an Eighth Amendment violation, something more than the mere negligence alleged here is required.

Accordingly, plaintiff's Eighth Amendment claim against defendant Irvin is dismissed.[8]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and

---

**8.** Although not mentioned anywhere in the complaint, there are some fleeting references throughout the motion papers that plaintiff complained to Guenther that he was being denied medical treatment and that Irvin had notice of the denial. I do not interpret these passing references to assert an Eighth Amendment claim for denial of medical treatment against Guenther and Irvin. However, even if plaintiff had pursued this claim, it would not state a cognizable Eighth Amendment violation. Apparently, after

his injury on August 5, 1991, plaintiff removed his bandages from his arm and started setting fires to his company. When plaintiff asked to see the nurse, the nurse refused to see him because she specifically had instructed plaintiff not to remove his bandages. I do not find that this claim, if actually pled, would amount to a sufficiently serious deprivation or deliberate indifference on the part of Guenther or Irvin to inmate health or safety.

defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.