**Keith Thomas COX, Plaintiff,**

v.

**Brian MALONE, Sharon Hornbeck, Lt. Zimmerman, Sgt. Ferebee, C.O. P.J. Simms—In Their Individual And Professional Capacities As Employees Of N.Y.S. Department of Correctional Services, Defendants.**

No. 00 CIV. 8355(SAS).

United States District Court, S.D. New York.

April 24, 2002.

136

Keith Thomas Cox, Napanoch, NY, for Pro se.

Yesenia Prieto, Assistant Attorney General, New York City, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Pro se plaintiff Keith Cox brings suit under Title 42, United States Code, section 1983 ("1983") for excessive use of force during a pat down frisk and for violation of his Fourteenth Amendment due process rights in connection with a disciplinary hearing. Defendants Deputy Superintendent of Administrative Services Sharon Hornbeck and Correction Officer Paul J. Simms [1] now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, defendants' motion is granted.

## II. FACTS

In 1999, Cox was incarcerated at the Mid–Orange Correctional Facility ("Mid–Orange") in Warwick, New York. See Prisoner Locator System, Ex. W to Prieto Aff. On August 27, 1999, at approximately 4:30 p.m., Cox was subjected to a pat frisk by Simms while exiting the "mess hall." See Inmate Misbehavior Report ("Report"), Ex. G to Prieto Aff. Upon hearing Cox state that he was going to leave bodies all over the place, Simms ordered plaintiff to

---

1. Brian Malone died on June 27, 2001 during the pendency of this action. See Suggestion of Death, Ex. T to the Affirmation of Yesenia Prieto, Assistant Attorney General ("Prieto Aff."). Lieutenant Frank Zimmermann and Sergeant Richard Ferebee have not yet been served. Accordingly, all claims against these defendants are dismissed with prejudice.

put his hands up against the wall. *See id.* After initially complying, Cox tried to turn away from the wall toward Simms. *See id.* Simms then placed his right hand between plaintiff's shoulder blades and pushed him back to the wall. *See id.* Simms completed the pat frisk without further incident. *See id.*

Plaintiff alleges that during the pat frisk, Simms pulled his jacket over his head and pushed him hard enough to cause his face to hit the wall. *See* Complaint, Claim Statements, Ex. A to Prieto Aff., ¶ 1. Plaintiff further admits, however, that his face did not hit the wall as he turned to the right to avoid doing so. *See id.* The only physical injury alleged by plaintiff is a hand abrasion that occurred while he was pulling his jacket off and moving to the right to avoid hitting the wall. *See id.; see also* Deposition of Keith Thomas Cox ("Cox Dep."), Ex. B to Prieto Aff., at 47. Plaintiff admits that this abrasion was a minor injury akin to a "zipper cut." *Id.* at 74.

After the pat frisk was completed, Cox was returned to his housing unit. *See* Memorandum From Sergeant Ferebee to Lieutenant Zimmerman dated August 27, 1999, Ex. E to Prieto Aff. at 1–2. Shortly thereafter, Sergeant Ferebee requested that plaintiff be escorted to the Special Housing Unit ("SHU"). *See id.* at 2. Plaintiff was placed in cell number 6 where he was examined by Nurse M. Irving and photographed. *See id.* at 2. Nurse Irving noted that plaintiff had no obvious injuries. *See* Health Assessment Form dated August 27, 1999, Ex. I to Prieto Aff. Lieutenant Zimmermann eventually went to the cell and informed plaintiff that he was responsible for ordering his confinement to SHU.[2] *See* Complaint, Complaint Statements, Ex. A to Prieto Aff., ¶ 3. Before being placed in SHU on August 27, 1999, plaintiff was in general population.[3]

Simms prepared an Inmate Misbehavior Report charging Cox with the following violations: Creating a Disturbance, Threats, Refusing a Direct Order, and Refusing Search and Frisk. *See* Report; *see also* Transcript of Disciplinary Hearing ("Hearing Tr."), Ex. C. to Prieto Aff., at 1. On September 1, 1999, a Tier III disciplinary hearing was commenced.[4] *See* Hearing Tr. at 1. Defendant Sharon Hornbeck ("H.O.Hornbeck") presided as the hearing officer. *See id.* In response to the Misbehavior Report, which was read into the record, Cox pled not guilty to each of the four charges. *See id.* at 2.

Before the hearing began, H.O. Hornbeck confirmed that plaintiff's request for assistance was granted. *See id.* Correc-

---

**2.** In SHU, inmates are confined to a single or double occupancy cell grouped so as to provide separation from the general population. *See* Affidavit of Donald Selsky, Director of the Special Housing/Inmate Disciplinary Program within the New York State Department of Correctional Services ("Selsky Aff."), Ex. S to Prieto Aff., ¶ 13. Inmates placed in SHU for disciplinary reasons are allowed out of their cells for one hour of outdoor exercise daily, a minimum of two showers per week, unlimited legal visits, and one non-legal visit per week. *See id.* at ¶ 14.

**3.** Inmates in general population also receive one hour of outdoor exercise daily. *See* Selksy Aff. ¶ 20. However, the average general population inmate spends approximately 12 hours per day outside his cell on weekdays, the majority of which is spent attending programs. *See id.* ¶¶ 21, 24. General population inmates are permitted to shower at least three times per week, *see* Minimum Provisions for Health and Morale Directive, Ex. E to Selsky Aff., ¶ G, and spend approximately 1½ hours out of their cells for meals. *See* Selksy Aff. ¶ 23.

**4.** Tier III hearings are held for "the most serious violations of institutional rules." *Walker v. Bates*, 23 F.3d 652, 654 (2d Cir. 1994).

tion Officer Altieri was appointed as plaintiff's assistant. *See* Assistant Form, Ex. K to Prieto Aff. On this form, Cox requested that the following individuals be interviewed as potential witnesses: Simms, Sergeant Ferebee and Lieutenant Zimmerman. *See id.* At the hearing, and upon inquiry from H.O. Hornbeck, plaintiff identified two inmates, Anthony McGee and Eric Priester, as witnesses on his behalf. *See* Hearing Tr. at 1–2. Both of these witnesses testified at the hearing. *See id.* at 3, 9.

After inmate McGee's testimony, H.O. Hornbeck adjourned the hearing until September 3, 1999, stating her intention to call Correction Officer J. Alvidge and Simms as witnesses on her behalf. *See id.* at 5. On that day, Alvidge testified but Simms did not. *See id.* at 5–6.

During the second phase of the hearing, plaintiff indicated that he no longer wanted Sergeant Ferebee as a witness and he signed a witness refusal form to that effect. *See id.* at 7–8. Lieutenant Zimmermann, whom plaintiff still wanted to testify, was then called as a witness. *See id.* at 8. After Zimmerman's testimony, the hearing was again adjourned until September 9, 1999, so that Priester could testify. *See id.* at 9. Plaintiff also testified on September 9, 1999. *See id.* at 11. Upon the conclusion of the testimony, H.O. Hornbeck asked plaintiff if he had any procedural objections at that time. *See id.* Plaintiff responded in the negative. *See id.*

On September 9, 1999, H.O. Hornbeck found plaintiff guilty of all four charges. *See* Superintendent Hearing Disposition, Ex. M to Prieto Aff.; *see also* Hearing Tr. at 12. As a result, plaintiff was sentenced to 180 days in SHU retroactive to August 27, 1999, three months loss of good time, and 180 days loss of packages, commissary, and phone privileges. *See id.* Plain-

tiff filed an administrative appeal of the decision the next day. *See* Appeal Form to Commission Superintendent's Hearing, Ex. N to Prieto Aff. Plaintiff's appeal was denied and the hearing disposition was affirmed on November 2, 1999. *See* Review of Superintendent's Hearing, Ex. O to Prieto Aff. The decision was ultimately reversed by Donald Selsky on March 13, 2000. *See* Reversal of Superintendent's Hearing/Expunction Order, Ex. P to Prieto Aff. The following reason was given for the reversal: "Failure to ·interview witnesses requested by inmate. No written reason for denial provided." *Id.*

Plaintiff had already served 165 days in SHU at the Lakeview Correctional Facility in Bronxville, New York, before the hearing disposition was reversed. *See* Cox Dep. at 86. As a result of the administrative reversal, plaintiff's good time credit was restored. *See* Restored Good Time Adjustment, Ex. Q to Prieto Aff. He was conditionally released on March 21, 2000. *See* Certificate of Release to Parole Supervision, Ex. R to Prieto Aff. Cox drafted his Complaint, dated August 27, 2000, while released on parole. The Complaint was received by this Court's Pro Se Office on August 28, 2000, and was filed on November 1, 2000.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 97 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must view the evidence "in the light most favorable" to the non-movant. *See Breland–Starling v. Disney Publ'g Worldwide,* 166 F.Supp.2d 826, 829 (S.D.N.Y.2001) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). A court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir.2001). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the nonmovant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). However, the non-moving party may not "rest upon ... mere allegations or denials." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (quotation marks, citations, and alterations omitted).

### B. The Prison Litigation Reform Act Does Not Bar Plaintiff's Excessive Force Claim

In 1996, the Prison Litigation Reform Act ("PLRA") was enacted by Congress to curb the filing of frivolous lawsuits by prisoners. In an attempt to do so, section 1997e(e) of the PLRA imposes a limitation on remedies available to incarcerated plaintiffs by providing, in pertinent part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Courts have consistently held that section 1997e(e) bars prisoner civil rights suits seeking damages for constitutional violations where the inmate-plaintiff suffers only emotional and mental injury. *See, e.g., Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997) (dismissing a prisoner's section 1983 action on the basis that a bruised ear lasting for three days was *de minimis* and could not serve as the requisite physical injury needed for a claim for emotional suffering); *Wright v. Miller,* 973 F.Supp. 390, 396 (S.D.N.Y.1997) (holding that prisoners could not recover damages for mental anguish under the PLRA).

Defendants argue that because plaintiff has failed to allege any physical injury, *see* Complaint ¶ V (requesting damages for mental anguish, defamation of character, false imprisonment, and emotional distress), he is therefore precluded by PLRA's physical injury requirement from recovering compensatory or punitive damages. The Second Circuit has, in some circumstances, recognized a distinction between prisoners who are incarcerated at the time of filing and individuals formerly incarcerated. In *Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999), the court found that the language of section 1997e(a), requiring full exhaustion as a pre-requisite to suit, did not literally apply to a plaintiff who was a parolee when he filed his complaint. The court noted that while the filing of

frivolous complaints has become a recreational activity for prisoners, this concern "simply [does] not apply to individuals who were formerly incarcerated." 169 F.3d at 167. Accordingly, the court held that litigants "who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision." *Id.*

■ The reasoning of *Greig* cannot be extended to the physical injury requirement of section 1997e(e). Section 1997e(a) is a *procedural* requirement requiring prisoners to fully exhaust their claims within the prison system before bringing a federal action. It makes no sense to apply this procedural requirement to former inmates who can no longer avail themselves of prison grievance procedures. Section 1997e(e), on the other hand, is a *substantive* limitation on the type of actions that can be brought by prisoners. Its purpose is to weed out frivolous claims where only emotional injuries are alleged. This purpose is accomplished whether section 1997e(e) is applied to suits brought by inmates incarcerated at the time of filing or by former inmates incarcerated at the time of the alleged injury but subsequently released. The fortuity of release on parole does not affect the kind of damages that must be alleged in order to survive the gate-keeping function of section 1997e(e). Because plaintiff's suit alleges only emotional injuries, it is barred by the PLRA irrespective of his status as a parolee at the time of filing.

## C. The Force Used by Simms Was *De Minimis*

There is an alternative ground in which plaintiff's excessive force claim can be dismissed. Where an inmate challenges a deliberate use of force as excessive and

unjustified, the primary source of substantive protection is the Eighth Amendment. *See Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). To establish an Eighth Amendment violation,

> an inmate must meet both an objective and a subjective requirement. To meet the objective requirement, the alleged violation must be sufficiently serious by objective standards.... The objective component is context specific, turning upon contemporary standards of decency.... To meet the subjective requirement, the inmate must show that the prison officials involved had a wanton state of mind when they were engaging in the alleged misconduct.

*Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999) (internal quotation marks and citations omitted).

■ Significant injury is not required "[w]hen prison officials maliciously and sadistically use force to cause harm [because] contemporary standards of decency always are violated." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se. See Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999). Nevertheless, the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided the use of force is not repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10, 112 S.Ct. 995; *see also Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) ("a *de minimis* use of force will rarely suffice to state a constitutional claim"); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (holding that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

■ Here, plaintiff's single allegation of a scratched hand does not satisfy the objective standard. Because Cox has not shown that Simms used force maliciously, *see infra*, the injury he sustained as a result of the force used must be sufficiently serious to warrant Eighth Amendment protection. *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A scratched hand and any psychological injuries resulting from the pat frisk simply do not rise to this level. As a matter of law, I find the injuries sustained by Cox as a result of the pat frisk, both physical and psychological,[5] to be *de minimis*. Accordingly, Cox has failed to satisfy the objective prong for an Eighth Amendment violation.[6]

Even if plaintiff could satisfy the objective prong, he has failed to establish that Simms acted maliciously to cause harm. The key inquiry for any Eighth Amendment claim of excessive force is whether " 'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir.1994) (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. 995). Under the circumstances,

Simms was acting in good faith to maintain order. Plaintiff was not cooperating in a pat frisk brought about by his own threatening statements. Simms used the amount of force needed to make plaintiff comply with the search and no more. Because plaintiff has not shown any malevolence on the part of Simms, he has failed to meet the subjective prong of an Eighth Amendment violation. Accordingly, plaintiff's claim for excessive use of force in violation of the Eighth Amendment must be dismissed.

**D. Whether Plaintiff Has a Protected Liberty Interest in Not Being Confined to SHU Is a Question of Fact**

■ To prevail on a section 1983 claim alleging a violation of a liberty interest without procedural due process, an inmate must first establish that he possessed a protected liberty interest. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With respect to liberty interests arising directly under the Due Process Clause,[7]

**5.** In the context of a prison where inmates are accustomed to routine searches of their person, it is difficult to fathom what, if any, psychological injury Cox sustained as a result of the routine pat frisk conducted by Simms.

**6.** Courts have reached similar conclusions where the injuries sustained have been significantly greater. *See, e.g., Warren v. Westchester County Jail*, 106 F.Supp.2d 559, 569–70 (S.D.N.Y.2000) (finding de minimis use of force where inmate was pushed in the arm and punched in the face, resulting in abrasions on inmate's face and neck); *Sprau v. Coughlin*, 997 F.Supp. 390, 394 (W.D.N.Y. 1998) (finding *de minimis* use of force where inmate was grabbed from behind the neck and hit several times across the neck, face and eye, resulting in a small bump under inmate's eye); *Brown v. Busch*, 954 F.Supp. 588, 597 (W.D.N.Y.1997) (finding an officer's

pushing, shoving and striking of an inmate after he disrupted a pat frisk to be a *de minimis* use of force).

**7.** Although a liberty interest may also arise under a state statute or regulation, an inmate asserting such an interest must also show, in addition to atypicality, that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996). In New York, there is no statutorily created right to be free from disciplinary confinement. *See People ex rel. Dawson v. Smith*, 69 N.Y.2d 689, 691, 512 N.Y.S.2d 19, 504 N.E.2d 386 (1986) (SHU is "a particular type of confinement within the facility which [DOCS] is expressly authorized to impose on lawfully sentenced prisoners committed to its custody"). Accordingly, if plaintiff does have

the Supreme Court has narrowly circumscribed its scope to protect no more than the most basic liberty interests in prisoners.... The Due Process Clause does not protect against every change in the conditions of confinement having a substantial adverse impact on inmates ... if those changes are within the normal limits or range of custody which the conviction has authorized the State to impose.

*Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (internal quotation marks and citations omitted). Furthermore, the Supreme Court has held that disciplinary confinement does not create a liberty interest triggering due process protection unless the confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

"Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' the standard will not be met unless the disciplinary and administrative sanctions are onerous." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999) (citing *Sandin,* 515 U.S. at 486, 115 S.Ct. 2293). In determining whether conditions create an atypical and significant hardship, courts should compare the specific conditions of the inmate's confinement to both the conditions in the general population and in other categories of segregation. *See Arce,* 139 F.3d at 336. The factors a court should consider in determining whether an inmate has suffered an atypical

and significant hardship under *Sandin* include:

the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement.

*Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998). Thus, a *Sandin* analysis entails both a consideration of the duration of the challenged confinement, as well as a fact-intensive examination of the conditions of that confinement.[8] *See, e.g., Ayers v. Ryan,* 152 F.3d 77, 83 (2d Cir.1998); *Arce,* 139 F.3d at 336; *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997).

Here, the difference in conditions between disciplinary segregation and administrative and detention segregation are negligible. In all three kinds of segregation, inmates are allowed one hour of outdoor exercise daily, a minimum of two showers per week, unlimited legal visits, and one non-legal visit per week. *See* Selsky Aff. ¶¶ 14, 15, 17. The only real difference between disciplinary and administrative segregation is that disciplinary inmates must complete a 30–day period of satisfactory adjustment before they become eligible for additional privileges such as more in-cell items and the ability to make commissary purchases. *See id.* ¶ 16. Inmates in administrative segregation are not required to wait thirty days before obtaining these additional privileges. *See id.*

---

a protected liberty interest, it must arise under the Fourteenth Amendment.

**8.** *The Second Circuit has instructed district courts to develop detailed factual records "in cases challenging SHU confinements of dura-*

tions within the range bracketed by 101 days and 305 days" to determine if the confinement is atypical and severe. *See Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000).

There are, however, significant differences between disciplinary SHU and general population. General population inmates spend considerably more time outside their cells, are entitled to at least three showers per week, and eat together in the "mess hall." In fact, out of the twelve hours general population prisoners spend in their cells, eight of them are spent sleeping. SHU inmates, on the other hand, spend 23 hours per day in their cells, are entitled to only two showers per week, and cannot partake in communal meals.

While plaintiff's SHU confinement did not affect the duration of his overall sentence as his good time credit was restored when the hearing officer's decision was reversed, the duration of plaintiff's SHU confinement, approximately 165 days, is significant. A review of post-*Sandin* decisions in this circuit does not yield a clear consensus as to how much SHU confinement represents an atypical and significant hardship. Some courts have held that SHU confinement for one year or less does not implicate a protected liberty interest. *See, e.g., Jackson v. Johnson,* 15 F.Supp.2d 341, 361–62 & n. 8 (S.D.N.Y.1998) (99 days in keeplock did not constitute an atypical and significant hardship under *Sandin*) (citing numerous cases); *Warren v. Irvin,* 985 F.Supp. 350, 354 (W.D.N.Y.1997) (same as to 161 days in SHU confinement); *Brooks v. DiFasi,* No. 93–CV–0197E(H), 1997 WL 436750, at *4 (W.D.N.Y. July 30, 1997) (same as to 180 days). Other courts have held that comparable periods of confinement raise an issue of material fact not suitable to summary judgment. *See, e.g., Hutchinson v. Blaetz,* No. 94 Civ. 3695, 1996 WL 374164, at *4 (S.D.N.Y. July 1, 1996) (whether 286 days of SHU confinement imposed an atypical and significant hardship raised a question of material

fact); *Bishop v. Keane,* No. 92 Civ. 6061, 1995 WL 384443, at *3 n. 4 (S.D.N.Y. June 28, 1995) (same as to 87 days in keeplock); *Hernandez v. Tiede,* No. 94–CV–908S, 1996 WL 863453, at *5 (W.D.N.Y. May 29, 1996) (whether 136 days in SHU is atypical is a question that requires discovery and fact-finding).

The duration of plaintiff's SHU confinement takes on even greater weight when one considers the reason why plaintiff was in SHU in the first place. Here, plaintiff failed to comply with a pat frisk search after having made some allegedly threatening comments. In the prison context, where violence and brutality are an everyday occurrence, plaintiff's infractions seem relatively innocuous. As such, imposition of 180 days of SHU confinement seems disproportionately harsh. This disparity, between offending conduct and sentence, weighs in favor of an atypical and significant hardship. However, I need not decide whether plaintiff has a protected liberty interest in being free from SHU confinement as there is an alternative basis for resolving his due process claim. *See Edmonson v. Coughlin,* No. 95–CV–97H, 1996 WL 622626, at *7 (W.D.N.Y. Oct. 4, 1996) ("where the record provides an alternative basis for determining the due process issue, the court should generally decline to address the question of whether a particular disciplinary penalty implicates a protected liberty interest").

## E. Plaintiff's Due Process Rights Were Not Violated by the Failure to Interview Simms

The failure of H.O. Hornbeck to interview Simms, a request made in plaintiff's Assistant Form, could have supported a viable section 1983 action under different

circumstances. As stated by the Second Circuit,

> [A] failure to provide an inmate assistance in preparing a defense or interview an inmate's requested witnesses without assigning a valid reason may . . . provide a sufficient basis for a viable § 1983 action. Prison authorities are now under a constitutional obligation to provide assistance to an inmate preparing for a disciplinary hearing. In addition, an inmates's due process rights are violated when a prison hearing officer refuses to interview witnesses without assigning a reason "logically related to preventing undue hazards to 'institutional safety or correctional goals.'."

*Fox v. Coughlin,* 893 F.2d 475, 478 (2d Cir.1990) (quoting *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985)) (other citations omitted).

■ Nonetheless, omissions or failures that would otherwise constitute due process violations can be waived by the inmate during the course of the disciplinary hearing. In *Bedoya v. Coughlin,* 91 F.3d 349, 350 (2d Cir.1996), the Second Circuit had to decide "whether the plaintiff's procedural due process rights were violated at a prison disciplinary hearing at which the presiding officer failed to summon a witness whose testimony the plaintiff had requested." The court found that plaintiff waived his right to call this particular witness "by failing to reiterate his request for the witness when given the opportunity to do so toward the close of the hearing and by acquiescing in [the hearing officer's] decision to conclude the proceedings." *Bedoya,* 91 F.3d at 351.

■ During his hearing, Cox similarly failed to request that Simms be interviewed or called as a witness. Here, too,

Cox failed to lodge any procedural objections at the close of the hearing when asked to do so. Plaintiff's silence, when he was given the opportunity to speak, implicitly ratified H.O. Hornbeck's decision to close the hearing without Simms' testimony. *See id.* at 352 ("Federal and state courts in this circuit have recognized that an inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing.") (citing cases). Because plaintiff waived his due process right to call Simms as a witness by failing to object to his omission, this purported due process "violation" cannot support plaintiff's section 1983 action. Accordingly, plaintiff's due process claim is dismissed on grounds of waiver.

## IV. CONCLUSION

In sum, while the duration and conditions of plaintiff's SHU confinement may constitute an atypical and significant hardship, plaintiff presents no due process violation given his waiver of his right to call Simms as a witness resulting from his silence when he had the opportunity to object. Plaintiff's due process claim is therefore dismissed as is his excessive force claim. The Clerk of the Court is directed to close this case.

SO ORDERED.