**Jeffrey E. SIMPSON, Plaintiff**

v.

**Cheryl GALLANT, et al., Defendants**

**No. CIV. 02–15–B–S.**

United States District Court,
D. Maine.

July 17, 2002.

Jeffrey E. Simpson, South Windham, Pro se.

Michael J. Schmidt, Esq., Wheeler & Arey, P.A., Waterville, for Cheryl Gallant, Richard Clukey, Richard Blanchard, Thomas Davis, Peter Baldacci, Edward Reynolds, defendants.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, District Judge.

No objection having been filed to the Magistrate Judge's Recommended Decision filed June 26, 2002, the Recommended Decision is accepted.

Accordingly, it is *ORDERED* that Defendants' Motion to Dismiss the Complaint be and hereby is *DENIED*.

### ORDER GRANTING MOTION TO AMEND AND RECOMMENDED DECISION ON MOTION TO DISMISS 42 U.S.C. § 1983 COMPLAINT

KRAVCHUK, United States Magistrate Judge.

Jeffrey Simpson, in an amended complaint, is seeking remedies for alleged violations of his constitutional right involving

access to the telephone and mail services when he was a pretrial detainee at the Penobscot County Jail. (Docket Nos. 1, 7, & 8.) The defendants, Cheryl Gallant, Richard Clukey, and Edward Reynolds, have filed a motion to dismiss the complaint on three grounds. They argue that Simpson has not stated a 42 U.S.C. § 1983 claim [1]; assuming he has, that they are entitled to qualified immunity; and that Simpson has not sufficiently exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). After the filing of this motion, Simpson filed a motion to amend his amended complaint, (Docket No. 15.) [2] I herein **GRANT** the second motion to amend and, for the reasons set forth below, I recommend that the Court **DENY** the motion to dismiss.

### Simpson's Pleadings

#### A. Allegations of Amended Complaint

In his amended complaint filed April 10, 2002, Simpson makes the following statement of claim. While a pretrial detainee at the Penobscot County Jail Simpson was placed in disciplinary segregation on or about October 10, 2001, for violations of jail rules. During the over three-month period he spent in segregation he was completely denied access to the phones and he was allowed to mail only three personal letters a week, with postage paid by the jail pursuant to a jail policy. He was not allowed to send additional mail using his own postage.

With respect to phone access Simpson submitted a slip to non-defendant, Sergeant Scott Basco on December 1, 2001, requesting a phone call so that he could arrange bail and/or call a lawyer. This request was denied and Simpson submit-

ted on the same day a Penobscot County Sheriff's grievance form indicating that he was a pretrial detainee and that he had a right to use the phone to arrange bail or call an attorney. Assistant Jail Administrator, Richard Clukey, a defendant in this action, denied Simpson's grievance. Regarding his mail privileges, Simpson submitted request forms on December 14, 2001, and January 11, 2002, asking that he be able to use his own funds to send additional letters. Both of these requests were denied.

Due to this interference with his telephone and mail access, Simpson could not determine who to have his court appointed investigator interview and his November 7, 2001, trial had to be continued as a consequence. On January 21, 2002, Simpson was released from custody on a $10,500 cash bail that was posted by an associate. On February 21, 2002, Simpson was found not guilty after a jury trial. On February 14, 2002, all additional counts against Simpson triggering his detention from October 10, 2001, through January 21, 2002, had been dismissed.

Simpson's theory of the case is that Penobscot Jail policies pertaining to outgoing mail and its policy prohibiting the use of a phone for any reasons by inmates not in good standing violated his right to prepare his defense and make bail. He states that defendant Gallant, as the Penobscot Jail administrator, is responsible to the Sheriff for recommending, drafting, and enforcing policies. Simpson charges Clukey, as assistant jail administrator, with assisting Gallant in drafting and enforcing these policies. With respect to Reynolds, Simpson asserts that, as Penobscot County

---

1. The defendants also attack the complaint based on the holding of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). For reasons that become clear below, I conclude that *Heck*'s rule is inapplicable to the current dispute.

2. Simpson at this time also submitted a letter withdrawing two earlier filed motions for leave to amend his amended complaint. (Docket Nos. 13 –15.)

Sheriff, he approves these policies and procedures.

The injuries of which Simpson complains are the postponement of his November trial, his over ninety-days of lost freedom, and the suffering of an extreme amount of stress and emotional anguish, that was exacerbated by his inability to contact family members.

### B. Proposed Second Amendment

In his second amended complaint Simpson adds that when Clukey denied his December 1, 2001, grievance he stated that it did not meet the criteria of a defined grievance and it did not present a grievable issue. (2d Am.Compl.¶ 8.) On an unspecified date Simpson submitted a request form asking the jail administration to provide the address for his associate, providing them with his phone number, which request was denied. (*Id.* ¶ 17.) He also clarifies that for purposes of this complaint Gallant, Clukey, and Reynolds are named in their official capacities. (*Id.* at ¶¶ 14–16.)

Simpson also expands his conclusion, faulting the Jail's policies and customs for causing his loss of liberty and maintaining that the continuous limitations on outgoing mail and the phone restrictions placed on pretrial detainees who are not in good standing infringed his right to immediate release on bail. He argues that the three personal letters a week, with the corresponding lag in delivery and response time, were not a sufficient substitute for phone access, particularly in light of the fact that he did not have the addresses for his associate. Simpson needed to have phone access and better mail access to prepare for trial, to contact witnesses, to find addresses of individuals who could assist with bail, to contact the investigator, and to arrange to have belongings stored and bills paid.

He states that he is seeking $500,000 in compensatory damages from the three defendants jointly and severally.

### Discussion

### A. Second Motion to Amend

As outlined above, the principal amendment achieved by this pleading is to clarify that Simpson is seeking to sue the three defendants in their official capacities. With respect to each defendant he states: "For purposes of this claim" they are named in their official capacities. (2d. Am. Compl. ¶¶ 14 –16.) While Simpson has alleged conduct by Clukey upon which he could attempt to premise a claim for individual liability, this amendment makes it clear that Simpson does not wish to so proceed against Clukey.

With respect to Simpson's second motion to amend, the defendants' only response to date is contained in their reply to Simpson's response to their motion to dismiss. The defendants state only that the amendments contained in the second amended complaint "do not eliminate the basis for which Defendants are seeking dismissal, and therefore Defendants request that the Plaintiff's Complaint, or assuming Plaintiff files an Amended Complaint, be dismissed." (Reply to Resp. to Mot. Dismiss at 3.)

In light of the absence of more formal opposition by the defendants I **GRANT** the motion to amend. With respect to the amendments clarifying that Simpson pursues these defendants in their official capacities, this amendment serves to focus this suit on the standards for § 1983 actions challenging the constitutionality of a governmental entity's policy or custom. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (observing that a § 1983 suit may be brought "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452(1986) (observing that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances" but cautioning that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered"); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

With respect to the allegations in the second amended complaint concerning Simpson's interactions with Clukey respecting the grievance and Simpson's allegation that the jail authorities refused to locate a phone number when provided with his associate's address, these are in the nature of additional facts that can be contested in later stages of this suit. As I indicate below, Simpson's first amended complaint (should have) sufficiently put the defendants on notice of the contours of his § 1983 claim.[3]

### B. Motion to Dismiss

### 1. Standard for Motion to Dismiss

In passing on this motion to dismiss I accept all of Simpson's allegations as true. *Buckley v. Fitzsimmons,* 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Since Simpson is proceeding *pro se* I subject his submissions to the "less stringent standards than formal pleadings drafted by lawyers."*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Also in light of Simpson's *pro se* status, I examine his other pleadings to understand the nature and basis of Simpson's claims. *Gray v. Poole,* 275 F.3d 1113, 1115 (D.C.Cir.2002) (citing the holding of *Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir.1999) that District Court abused its discretion when it failed to consider the *pro se* plaintiff's complaint in light of his reply to the motion to dismiss).

### 2. Nature of the Constitutional Claim

#### a. Motion to Dismiss Based on Failure to State a Claim

The defendants' motion to dismiss characterizes Simpson's complaint as one seeking redress for the imposition of disciplinary sanctions. Citing *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), they argue that Simpson cannot challenge constitutional frailties vis-a-vis the disciplinary determination without first having the disciplinary determination overturned. Addressing the limitations on mail and phone access, the defendants argue that even if a policy impinges an inmate's constitutional rights it can withstand a challenge to its constitutionality if it is reasonably related to penological interests. They contend that withholding mail from an inmate for punitive reasons does not run afoul of the Constitution because it is not "an atypical and significant hardship" within the measure of *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).[4]

---

**3.** The remaining additional material in the second amended complaint is in the nature of argument.

**4.** In a footnote, the defendants acknowledge that Simpson has alleged that he was not allowed to make calls to make bail or communicate the names of individuals he wanted to have interviewed in his criminal case. (Mot. Dismiss at 5 n. 2.) However they assert that Simpson has not alleged that he was denied access to his lawyer or the investigator or that he could not have used one of his three letter allotments to communicate the necessary bail/investigatory information. (*Id.*)

### b. Proper Characterization of the Constitutional Claim

 I conclude that the defendants have mischaracterized Simpson's claim as challenging the imposition of disciplinary sanctions. Simpson is not arguing that he did not violate the Jail's rules so as to justify the imposition of some disciplinary sanction. His is not in the nature of a Due Process challenge to his disciplinary proceedings. Rather, he is arguing that the nature of the sanction imposed violated his constitutional right to pursue bail and prepare his defense while a pretrial detainee. Therefore, a court determination that it was impermissible to block Simpson's access to the phone and the mail during his segregation would not undermine the validity of the underlying disciplinary determination. Thus, the principals of *Heck* are inapposite.

The question then becomes that assuming that Simpson was appropriately subject to punishment for the unspecified infraction did the conditions of his segregation run afoul of his Constitutional rights?

Though the defendants, a bit warily, recommend the standard to me, I conclude that *Sandin* and *Warren v. Irvin*, 985 F.Supp. 350 (W.D.N.Y.1997), a case cited by the defendants, do not govern the claim Simpson advances. During the period in question Simpson was a non-convicted pretrial detainee who was seeking access to the phones and mail to procure his freedom and advance his defense. This situation is unlike that of a convicted inmate who has no right to bail and has had his day in court; such individuals must suffer typical retractions of privileges as a consequence of post-conviction misconduct.

Rather than a *Sandin* concern, there are overlapping Constitutional principles that are implicated by Simpson's allegations. As a challenge to the jail's reaction to a disciplinary infraction, Simpson's claim could be characterized as a condition of pretrial detention claim under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Therein the Supreme Court stated:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.

441 U.S. at 539, 99 S.Ct. 1861 (footnotes and citations omitted). The concern underlying *Bell* is that the challenged conditions are not "imposed to sanction prior unproven criminal conduct," but are "imposed to enforce reasonable prison disciplinary requirements."*Collazo–Leon v. United States Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir.1995).

 As I construe Simpson's allegations as supporting a claim of this ilk, I cannot recommend granting the defendants' motion to dismiss for there is nothing before me at this pleading stage as to the nature of Simpson's infraction and the Jail's justifications for its policy or custom by which I could judge the reasonableness of the segregation limitations. For instance, I cannot make a determination at this juncture whether the conditions of segregation allegedly imposed here were reasonably related to the "essential objective" of pretrial confinement of insuring that Simpson was present for trial. *Bell*, 441 U.S. at 535, 99

S.Ct. 1861; *see also Martucci v. Johnson,* 944 F.2d 291, 294 (6th Cir.1991). Nor can I gage whether the restriction or condition was "reasonably related to a legitimate goal" or, conversely, whether it was "arbitrary or purposeless." *Bell,* 441 U.S. at 539, 99 S.Ct. 1861. The defendants have not denied that the policy with respect to mail and phone access for pretrial detainees is as it is characterized by Simpson. Nor have the defendants asserted any argument as to the reasons for the blanket prohibition on phone access for pretrial detainees in disciplinary segregation other than that the withholding of privileges is a legitimate form of punishment. Also the pleadings provide no hint as to either the charges on which Simpson was being detained or the reasons why Jail authorities placed Simpson in segregation. Based on *Bell,* I conclude that this is not a claim ripe for dismissal.

■ Simpson's as yet untested allegations also support a claim seeking redress because of the defendants' interference with his access to the courts. *See, e.g., Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Martucci,* 944 F.2d at 295. The United States Supreme Court this term addressed denial of access to the court claims in *Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). In this decision the Court distinguished two types of denial of access to courts claims, and Simpson's falls into the second category articulated. These are cases that "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable,"including "the loss of an opportunity to seek some particular order of relief." *Id.* 122 S.Ct. at 2186. "However unsettled the basis of the constitutional right of access to courts," the Court clarified, "our cases rest on the recognition that the right is ancillary to the underlying

claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* 122 S.Ct. at 2186–87. *See also Johnson–El v. Schoemehl,* 878 F.2d 1043, 1051 (8th Cir.1989) ("Pre-trial detainees have a substantial due process interest in effective communication with their counsel and in access to legal materials. When this interest is inadequately respected during pre-trial confinement, the ultimate fairness of their eventual trial can be compromised."). The court process Simpson claims to have lost was his right to make bail and his right to proceed with a scheduled trial.

■ With respect to Simpson's allegations that he was not allowed to use the phones to seek assistance of counsel, this is cognizable under the Sixth and, as against the State, the Fourteenth Amendment. *See, e.g., Martinez Rodriguez v. Jimenez,* 409 F.Supp. 582, 594 (D.P.R. 1976) (addressing a pretrial detainees' access to counsel claim observing: "Assistance of counsel requires opportunity for consultation in conditions which will preserve the attorney-client privilege"). Furthermore, Simpson's claim concerning interference with his ability to post bail falls under the Fourteenth Amendment umbrella that protects Simpson's right to "post-arrest procedural guarantees" such as bail. *See Brady v. Dill,* 187 F.3d 104, 108 (1st Cir.1999).

In their motion to dismiss and their reply to Simpson's response to their motion to dismiss the defendants persevere in asserting that Simpson has not alleged that he was denied access to the telephone to access his attorney; rather they paint his plaint as a complaint seeking unfettered access to the phone in order to make personal calls. They also contend that Simpson has not asserted that his Sixth Amendment rights had been violated or

that he has alleged a "valid claim" that he was denied access to a means to make bail.

To the contrary, at the motion to dismiss stage, I conclude that Simpson has alleged sufficient facts that he was denied adequate access to the phone for purposes of defending the charges against him and that he was denied access to a means to make bail. Federal Rule of Civil Procedure 8(a)(2) requires no more from a complaint than a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Recent case law has counseled that a court must be very wary of requiring more than a simple notice pleading. *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, ——, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."); *Walker v. Benjamin,* 293 F.3d 1030, 1039 (7th Cir.2002) (reversing in part a qualified immunity determination in favor of defendants premised on insufficient notice pleading, concluding that the plaintiff "need not set out in detail all of the facts upon which he bases his claim. Rule 8(a) requires only that the complaint give the defendants fair notice of what the claim is and the grounds upon which it rests"); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Regarding Simpson's allegations supporting a claim that the defendants' conduct runs afoul of *Bell* and that they impermissibly interfered with his Sixth Amendment right to counsel and bail, I conclude that he has plead sufficient facts.

■ With respect to the access to the courts claim, I also conclude that Simpson has adequately articulated his underlying claim of denial of right to bail and assistance of counsel to prepare for his criminal trial to meet the pleading standard sharpened in *Christopher,* 236 U.S. 403, —— –

——, 122 S.Ct. 2179, 2186–88, 153 L.Ed.2d 413. I also note that his allegations are buttressed by the factual assertions that his November trial had to be postponed, that soon after his release from detention he was cleared of the charges, and that he was able to make bail when he finally contacted his associate. So, I conclude that Simpson's second amended complaint survives the *Christopher* caution to "describe the predicate claim well enough to apply the nonfrivolous test." *Id.* at 2187.

### 3. Qualified Immunity

■ Qualified immunity shields government employees performing their discretionary functions from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See also Davis v. Rennie,* 264 F.3d 86, 113 (1st Cir.2001) ("Qualified immunity protects state actors 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ Qualified immunity is available to individuals, not to governmental entities. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) ("[T]here is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify [affording] qualified immunity [to a city]. We hold ... that the municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983."). Simpson's granted second amendment specifies that he is suing the defendants only in their official capacity.

This is the equivalent of suing a governmental entity. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ( "[W]e have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond."). Therefore the assertion of qualified immunity is mooted.

### 4. Failure to Exhaust

The defendants argue that Simpson's suit should be dismissed because he has not satisfied the exhaustion requirement of 42 U.S.C. § 1997e(a). Congress has provided that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)

Simpson alleges he is no longer an inmate in the Jail. There is precedent in this District that concludes that a former prisoner/plaintiff is not subject to the § 1997e(a) exhaustion requirement. *See Murphy v. Magnusson,* 1999 WL 615895 (D.Me.1999) (not requiring § 1997e(a) exhaustion by a former-prisoner plaintiff who had been released from the defendant's custody after the filing of the complaint); *but cf. Medina–Claudio v. Rodriguez–Mateo,* 292 F.3d 31, 34–35 (1st Cir.2002) (concluding that the fact that a prisoner is transferred to various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit, distinguishing cases that involved former prisoners). But even if I were to assume that § 1997e(a) is applicable to Simpson now that he has been released and is no longer

incarcerated anywhere, I would not conclude that Simpson has not pled exhaustion of his administrative remedies sufficient to survive a motion to dismiss.

Simpson alleges that he submitted a slip on December 1, 2001, requesting a phone call so that he could arrange bail and/or call a lawyer. When this request was denied Simpson submitted on the same day a Penobscot County Sheriff's grievance form indicating that he was a pretrial detainee and that he had a right to use the phone to arrange bail or call an attorney which was denied by Assistant Jail Administrator, Richard Clukey, who stated that it did not meet the criteria of a defined grievance and it did not present a grievable issue. On an unspecified date Simpson submitted a request form asking the jail administration to provide the address for his associate, providing them with his phone number and this request was denied. Regarding his mail privileges, Simpson submitted request forms on December 14, 2001, and January 11, 2002, concerning his mail privileges seeking permission to use his own funds to send additional letters and these requests were denied.

Simpson has adequately pled exhaustion for purposes of this motion to dismiss. The defendants' argument that he could have done more does not sufficiently controvert Simpson's claims concerning his efforts to seek redress within the Jail. *Compare Ray v. Kertes,* 285 F.3d 287, 293, 295 (3d Cir. 2002) (holding that the Prison Litigation Reform Act (PLRA) exhaustion requirement is an affirmative defense and that a prisoner need neither plead nor prove exhaustion to proceed under the PLRA, noting that the Second, Seventh, Ninth and D.C. Circuits have so held) *with Knuckles El v. Toombs,* 215 F.3d 640, 642 (6th Cir. 2000) (holding that a prisoner was required to "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable adminis-

trative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome").

### 5. The Limitation on Recovery under 42 U.S.C. § 1997e(e)

Finally with respect to the defendants' assertion that Simpson's claims for emotional distress are barred, the applicable statute reads:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Simpson has not alleged that he suffered any physical injury. However, as noted with respect to § 1997e(a), Simpson is not confined in a jail, prison, or other correctional facility; in fact he has been absolved of all charges for which he was being detained.[5]

■■■ While the First Circuit has not addressed whether the § 1997e(e) recovery limitation applies to individuals who are no longer in custody when they file suit, other circuits have concluded that it is inapplicable. *See, e.g., Harris v. Garner*, 216 F.3d 970, 973–80 (11th Cir.2000); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998). The issue has percolated under the surface in some cases in this District, but has not been definitively addressed. *See, e.g., Miller v. Kennebec County*, 219 F.3d 8, 12 –13 (1st Cir.2000). Even if I were to conclude the § 1997e(e) limitation applies to Simpson's suit Simpson could proceed with his suit seeking nominal and special damages. *See Dawes v. Walker*, 239 F.3d 489, 496 (2d Cir.2001) ("The failure of prisoners to plead or establish a compensable actual injury in a § 1983 constitutional tort claim, therefore, only precludes the recovery of compensatory damages, but does not lead to the dismissal of the underlying claim. Nominal damages remain available and the action is entitled to proceed."); *see also Doe v. Delie*, 257 F.3d 309, 314 (3d Cir.2001) (observing that " § 1997e(e) does not bar claims seeking nominal damages to vindicate constitutional rights").[6] Since this action would go forward even if Simpson was subject to the § 1997e(e) limitation, I need not decide today, without the benefit of a more thorough treatment by the parties, how, if at all, § 1997e(e) might impact any possible recovery by Simpson.

### Conclusion

For the reasons set forth above, I hereby **GRANT** the second motion to amend and recommend that the Court **DENY** the motion to dismiss.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is

---

**5.** The original complaint here was filed January 23, 2002 and Simpson, in his amended complaint, alleges that he was released January 21, 2002. The documentation accompanying the *original* complaint suggests that Simpson was a prisoner when he prepared the complaint, but all the documents are dated prior to January 21, 2002.

**6.** *Doe* also suggests that claims for punitive damages survive the § 1997e(e) limitation.

Given that Simpson is proceeding on an official capacity theory only, which is tantamount to suing a municipality or the county, punitive damages are out of the question. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("A municipality . . . can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself.").

sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 26, 2002.